UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:21-cv-00173-AGF |
| | ) | |
| THE UNITED STATES OF | ) | |
| AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

In this action under the Federal Tort Claims Act (FTCA), Plaintiff alleges that she was sexually assaulted by Department of Veterans Affairs (VA) nurse practitioner William B. Luchtefeld[1] while Plaintiff was a patient at a VA medical center in November of 2019.  The matter is now before the Court on Defendant's motion to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim.  ECF No. 10. In that motion, Defendant argues that the Court lacks jurisdiction and that Plaintiff fails to state a claim because Luchtefeld was not acting within the scope of his employment when he engaged in the alleged torts.

Plaintiff responded to the motion to dismiss and, thereafter, the parties jointly moved for additional time for Plaintiff to conduct discovery on the jurisdictional issues raised in Defendant's motion and to supplement Plaintiff's response.  *See* ECF No. 21.

---

[1]     The VA has since terminated Luchtefeld's employment.

The Court granted the joint motion, discovery proceeded, Plaintiff supplemented her response, and Defendant has now filed a reply.  Neither party has requested an evidentiary hearing.

For the reasons set forth below, the Court will grant Defendant's motion under Rule 12(b)(1) and will dismiss this case without prejudice for lack of subject-matter jurisdiction, without reaching Defendant's alternative motion under Rule 12(b)(6).

## BACKGROUND

The following facts are taken from the complaint and, where indicated, from evidence submitted in connection with the current motion.  At the relevant time, Plaintiff was a patient of the VA Medical Center at St. Louis being treated for a hip injury.

The VA referred Plaintiff for treatment of her hip pain at a battlefield acupuncture ("BFA") therapy group at the facility's outpatient clinic.  Defendant has provided evidence that BFA involves placing needles or tacks into five spaces in a patient's ear.

Plaintiff attended three BFA sessions conducted by Luchtefeld.  Plaintiff's medical records indicate that Luchtefeld was Plaintiff's primary care provider.  Plaintiff's first three BFA sessions were held in a group setting.  After the third group session, Luchtefeld called Plaintiff and scheduled her for treatment on November 21, 2019.

Upon Plaintiff's arrival to her appointment on November 21, 2019, Plaintiff was the only patient present and was led to what appeared to be Luchtefeld's office for her BFA therapy.  Luchtefeld proceeded to ask Plaintiff questions of a personal nature, including asking Plaintiff to show him pictures from her recent family vacation in Cancun.  Plaintiff declined to share photos.

Luchtefeld then asked Plaintiff if she had received any relief from the BFA therapy he had previously performed on her left ear.  Luchtefeld informed Plaintiff that massaging can sometimes help with the pain and asked Plaintiff if she wanted the hip pain "massaged out."  Plaintiff asked Luchtefeld if there were any medical means of relieving the pain that had not been resolved by the BFA therapy, to which Luchtefeld responded "sort of" and then reached into his desk drawer for a bottle of lotion. Luchtefeld stated or implied that the lotion was a medication of some kind.

Next, Luchtefeld instructed Plaintiff to lay on her left side, after which Luchtefeld began massaging Plaintiff's lower back, hip, and stomach.  Luchtefeld instructed Plaintiff to move her pants down to expose her injured hip area.  Luchtefeld then moved his hand between Plaintiff's legs and began to grope Plaintiff's vagina and digitally penetrated her vagina, causing pain and burning.  Luchtefeld also placed his hand under Plaintiff's shirt and began to grope her breast.

Plaintiff stood up and stopped Luchtefeld, left his office crying, and asked another VA employee to see Luchtefeld's supervisor and a VA staff psychiatrist.  John Randall Shepherd, M.D., arrived to speak with Plaintiff, purporting to be Luchtefeld's supervisor. However, Luchtefeld interrupted the conversation and offered his business card to Plaintiff, thus preventing Plaintiff from being able to fully report the events.

Plaintiff thereafter exhausted her administrative remedies and filed suit in this Court under the FTCA, on theories of negligence (Count I), battery (Count II), misrepresentation and deceit (Count III), and false imprisonment (Count IV).[2]

## ARGUMENTS OF THE PARTIES

In its motion, Defendant argues that the Court lacks jurisdiction and that Plaintiff fails to state a claim because Luchtefeld was not acting within the scope of his employment, such that the FTCA's limited waiver of sovereign immunity does not apply.

Defendant argues that Luchtefeld was acting outside the scope of his employment when he sexually assaulted Plaintiff because Luchtefeld's conduct was not the kind of activity that the VA employed him to perform at the BFA clinic.  Defendant has submitted evidence suggesting that the BFA clinic focuses on BFA therapy, that Luchtefeld was the clinic's only BFA provider at the relevant time, and that patients seeking non-BFA therapy would be directed to a non-BFA primary care provider. Defendant has also submitted evidence indicating that Luchtefeld lacked chiropractic privileges, which are required to perform any massage therapy.

Defendant's evidence indicates that BFA therapy does not require a patient to remove any clothing, does not involve the use of lotion or the massaging of any part of the body, and does not involve the touching of any body part except the patient's ears. Further, Defendant's policies required a chaperone whenever a patient's examination

---

[2]     After Defendant filed the current motion, Plaintiff voluntarily dismissed two additional claims (Counts V and VI), alleging premises liability and failure to supervise/negligent retention.  *See* ECF Nos. 20 & 35.  Therefore, the Court will not address Defendant's arguments directed to these two counts.

involves "gender-specific examinations, procedures, or treatments involving the breast, genitalia, and rectum, regardless of the gender of the provider."  ECF No. 15-7.

Defendant notes that Plaintiff previously received BFA therapy from Luchtefeld and was aware that Luchtefeld's conduct was not within the scope of BFA therapy because Plaintiff stopped Luchtefeld from assaulting her and reported his misconduct. Further, Defendant cites evidence indicating that Luchtefeld's conduct violated VA policies, which prohibit employees from using their position to take advantage of patients, provide that physical contact between patients and employees should only happen when clinically warranted, and prohibit sexualized touch.  *See* ECF No. 15.   For all of these reasons, Defendant argues that Luchtefeld was acting outside the scope of his employment and for purely private and personal desires.

In response, Plaintiff argues that Defendant's evidence does not demonstrate that Luchtefeld's treatment of Plaintiff was limited to BFA therapy and that the evidence of record instead indicates that Luchtefeld's treatment of Plaintiff extended to his full privileges as Plaintiff's primary care provider, including independently diagnosing patients and providing a wide range of non-invasive treatment.  Plaintiff notes that Luchtefeld's assault took place during her medical appointment for treatment of hip pain and that the assault began with a massage of Plaintiff's hip area.

## DISCUSSION

### Legal Standard

"A district court has the authority to dismiss an action for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint

supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Johnson v. United States*, 534 F.3d 958, 962 (8th Cir. 2008) (citation omitted). Thus, when ruling on a Rule 12(b)(1) motion, the Court may consider materials outside the pleaded allegations of the complaint. *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990).

Moreover, the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.  In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *Id.*  The plaintiff bears the burden to prove that jurisdiction does in fact exist. *Id*.  And "[o]nce the evidence is submitted, the district court must decide the jurisdictional issue, not simply rule that there is or is not enough evidence to have a trial on the issue." *Id.*

## Subject-Matter Jurisdiction Under the FTCA

"The FTCA is a limited waiver of sovereign immunity, allowing the federal government to be sued for the actions of any employee of the Government while acting within the scope of his office or employment under circumstances where the United States would be liable if it were a private employer." *St. John v. United States*, 240 F.3d 671, 676 (8th Cir. 2001) (citing 28 U.S.C. §§ 1346(b), 2674).  "A threshold requirement to establish jurisdiction under the [FTCA] is that the federal employee must have been acting within the scope of his employment when the tort was committed." *Magee v. United States*, 9 F.4th 675, 680 (8th Cir. 2021) (citation omitted).  "That question is governed by the law of the State where the alleged tort was committed." *Id.*

6

A separate federal statute specific to veterans, 38 U.S.C. § 7316 (the "VA Immunity Statute"), "applies the remedy available against the United States under the FTCA to damages arising from the provision of medical services by health care employees of the VA."  *Ingram v. Faruque*, 728 F.3d 1239, 1245, 1248 (10th Cir. 2013).

There are exceptions to the FTCA's waiver of sovereign immunity.  Specifically, 28 U.S.C. § 2680(h) provides that the provisions of the FTCA "shall not apply to ... [a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."  28 U.S.C. § 2680(h).  However, the VA Immunity Statute removes the above-noted exception for intentional tort claims "arising out of a negligent or wrongful act or omission [committed by VA health care employees] in furnishing medical care or treatment . . . while in the exercise of such person's duties in or for the Administration." 38 U.S.C. § 7316(f).

Although Plaintiff, like Defendant, primarily relies on Missouri vicarious-liability law to prove jurisdiction under either the FTCA or the VA Immunity Statute, Plaintiff also appears to suggest that the scope-of-employment inquiry is only relevant to the former.  *See* ECF No. 34 at 14.  To the extent that Plaintiff contends that the VA Immunity Statute waives sovereign immunity for intentional torts committed outside the scope of employment, the Court rejects that argument.

The VA Immunity Statute merely extends FTCA liability to intentional torts committed by VA health care employees; it does not eliminate the jurisdictional inquiry under the FTCA.  To the contrary, the VA Immunity Statute makes clear that it applies

7

only to wrongful acts committed by VA health care employees "in furnishing medical care or treatment . . . *while in the exercise of such person's duties in or for the Administration*." 38 U.S.C. § 7316(f) (emphasis added); *see also Franklin v. United States*, 992 F.2d 1492, 1500 (10th Cir. 1993) (noting that in enacting the VA Immunity Statute, "Congress chose . . . to expand the circumstances under which the Federal government accepts liability for the acts of its employees *acting within the scope of their employment* so as to cover actions of VA health-care employees that are characterized as intentional torts under the laws of various states") (emphasis added and removed).

Thus, federal courts determining their jurisdiction under the VA Immunity Statute still look to the FTCA's scope-of-employment test and corresponding state law. *See, e.g.*, *Leininger v. United States*, 499 F. Supp. 3d 973, 992 (D. Kan. 2020); *Clark v. United States*, No. 2:20-CV-00692-LSC, 2021 WL 4197592, at *5 (N.D. Ala. Sept. 15, 2021).

**Scope of Employment Under Missouri Law**

"Under Missouri law, the analysis focuses on whether the act was done by virtue of the employment and in furtherance of the business or interest of the employer." *Magee*, 9 F.4th at 680 (citing *Cluck v. Union Pac. R.R. Co.*, 367 S.W.3d 25, 29 (Mo. 2012)). "An act is done while engaged in the employer's business if it is fairly and naturally incident to the employer's business and did not arise wholly from some external, independent or personal motive." *Id.* (quoting *Higgenbotham v. Pit Stop Bar & Grill, LLC*, 548 S.W.3d 323, 328 (Mo. Ct. App. 2018)).

Moreover, "[t]he fact that the servant intends a crime, especially if the crime is of some magnitude, is considered in determining whether or not the act is within the

employment, since the master is not responsible for acts which are clearly inappropriate to or unforeseeable in the accomplishment of the authorized result." *Wellman v. Pacer Oil Co.*, 504 S.W.2d 55, 58 (Mo. 1973). "The master can reasonably anticipate that servants may commit minor crimes in the prosecution of the business, but serious crimes are not only unexpectable but in general are in nature different from what servants in a lawful occupation are expected to do." *Id.* In the case of serious crimes or outrageous acts, "the facts may indicate that the servant is merely using the opportunity afforded by the circumstances to do the harm," and the principal "not liable for such acts." *Id.* (quoting Restatement of Agency (Second) § 231).

With respect to sexual misconduct by an employee, Missouri courts have held that such conduct is not within the scope of employment as a matter of law even where, as here, the employee took advantage of his job position to commit the misconduct and the misconduct took place during work hours and at the workplace. These courts have reasoned that such sexual acts generally arise wholly from the employee's personal motive rather than to serve the employer in any part. *See, e.g.*, *Gibson v. Brewer*, 952 S.W.2d 239, 245–46 (Mo. 1997) ("[I]ntentional sexual misconduct and intentional infliction of emotional distress are not within the scope of employment of a priest, and are in fact forbidden."); *P.S. v. Psychiatric Coverage, Ltd.*, 887 S.W.2d 622, 625 (Mo. Ct. App. 1994) ("Regardless of whether sexual misconduct takes place during or in connection with therapy, it is not the general kind of activity a therapist is employed to perform. The sexual encounters between plaintiff P.S. and Dr. Bouzrara resulted from purely private and personal desires."); *Gilley v. Missouri Pub. Entity Risk Mgmt. Fund*,

9

437 S.W.3d 315, 319–20 (Mo. Ct. App. 2014) ("It is absurd to think that Key's rape of Gilley was undertaken in furtherance of the interests of Cole County.  Clearly, the act arose from Key's personal motive.").

Other jurisdictions have come to the same conclusion, including in cases under the FTCA.  *E.g.*, *Bodin v. Vagshenian*, 462 F.3d 481, 483-86 (5th Cir. 2006) (affirming district court's finding that a VA psychiatrist was not acting within the scope of employment under Texas law for the purpose of an FTCA claim when he performed unnecessary genital examinations during psychiatric sessions); *see also Regions Bank & Tr. v. Stone Cty. Skilled Nursing Facility, Inc.*, 49 S.W.3d 107, 115 (Ark. 2001) (holding under Arkansas law that a certified nursing assistant "was not, by any stretch of the imagination, acting within the scope of his duties as a CNA when he [sexually] assaulted [the plaintiff]"); *Stern v. Ritz Carlton Chicago*, 702 N.E.2d 194, 198 (Ill. 1998) (holding as a matter of Illinois law that masseurs were not acting within the scope of employment when they sexually assaulted hotel guests during massages); *Martin v. Milwaukee Cty.*, 904 F.3d 544, 555–56 (7th Cir. 2018) (holding under Wisconsin statutory indemnification law that "no reasonable jury could find . . . sexual assaults [by a county jail guard against an inmate] were in the scope of his employment" where then inmate presented no evidence that the assaults were "actuated in any way by a purpose to serve [the] County"); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 796, n.2 (1998) (noting in dicta that "many courts in non-Title VII cases have held sexual assaults to fall outside the scope of employment") (citing Note, *"Scope of Employment" Redefined: Holding*

*Employers Vicariously Liable for Sexual Assaults Committed by their Employees*, 76
Minn. L.Rev. 1513, 1521-1522, and n. 33, 34 (1992)).

Plaintiff argues that the sexual assault here began with the massage of Plaintiff's
hip, which at least partially related to Luchtefeld's treatment authority and duties as a
primary care provider.  However, the Court is persuaded by Defendant's evidence that
Luchtefeld's treatment authority in this case was limited to BFA therapy and that any
massage of Plaintiff was not intended in any way to treat Plaintiff's hip pain (and thereby
serve the VA) but rather motivated wholly by Luchtefeld's personal desires.

Moreover, Plaintiff's asserted injuries arose not out of Luchtefeld's physical
contact with Plaintiff generally but specifically out of Luchtefeld's physical "contact with
[Plaintiff's] genitalia and/or breasts."  ECF No. 1 at ¶ 31.  Contrary to mixed-motive
cases, where the employee only slightly or partly deviates from carrying on the business
of his employer for personal or private reasons, Plaintiff has not presented evidence that
Luchtefeld's contact with her genitalia or breasts was in any way related to Luchtefeld's
treatment of Plaintiff's hip pain or was motivated in any part by a desire to serve the VA.
*Cf. Leininger v. United States*, 499 F. Supp. 3d 973, 984-92 (D. Kan. 2020) (holding that
a primary care provider was acting within the scope of his employment under Kansas law
for the purpose of an FTCA claim when his treatment of the plaintiff undisputedly
included performing genital exams, and the plaintiff presented expert testimony and
testimony from the provider indicating that at least some of the genital exams the
provider performed on the plaintiff were medically necessary and were intended to serve

11

the VA, even though the provider failed to wear gloves and continued the genital exams for longer than necessary for partly personal reasons).

Rather, all evidence and inferences here point to Luchtefeld's purely personal desire.  Indeed, Plaintiff apparently did not believe that Luchtefeld's contact with her genitalia and breasts was part of her treatment, as she stopped Luchtefeld from engaging in such contact and immediately attempted to report the incident.  And according to Plaintiff, Luchtefeld attempted to interfere with her reporting, suggesting that he did not want his employer to learn of the incident.

Although the scope-of-employment test is fact-intensive, the Eighth Circuit has made clear that "the factual nature of this inquiry [does not] somehow render[] the jurisdictional issue so bound up with the merits that a full trial on the merits is necessary to resolve the issue," *Johnson*, 534 F.3d at 963 (citations omitted).  Plaintiff has been granted the full amount of time she requested for discovery on the scope-of-employment issue.  She has not requested an evidentiary hearing or suggested that additional discovery would reveal a basis for jurisdiction under the FTCA.  On this record, Plaintiff has not demonstrated that Luchtefeld was acting within the scope of employment so as to establish jurisdiction under the FTCA or VA Immunity Statute.

<u>CONCLUSION</u>

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion to dismiss for lack of subject-matter jurisdiction is **GRANTED**.  ECF No. 10.   This case is **DISMISSED without prejudice**.

12

A separate Order of Dismissal will accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 28th day of March, 2022.